BANKERS TRUST COMPANY, Appellee, v. T. J. HILL et al., Appellants.
No. 38981.

1376

NOVEMBER 20, 1928.

REHEARING DENIED APRIL 5, 1929.

*Lee, Steinberg & Walsh,* for appellants.

*Sargent, Gamble & Read* and *Addison & Smedal,* for appellee.

FAVILLE, J.—The appellee is a banking institution located at Des Moines, and at the inception of the contract involved in this action, the First National Bank of Cambridge was a corpo-  ration engaged in the banking business in the town of Cambridge. It will be referred to hereafter as the Cambridge bank. The appellants were directors in said bank. The appellee was a correspondent bank of the Cambridge bank. It appears that the Cambridge bank had made "excess loans" to some of its

customers: that is to say, the bank had loaned to certain of its customers an amount in excess of the legal limit which it was permitted, under the Federal statute, to loan to one customer. The Cambridge bank desired to avoid these excess loans and still continue to accommodate its customers. To carry out this purpose, the officers of the said banks devised a plan by which, instead of having notes for said excess loans run direct to the Cambridge bank, the notes should be taken in the name of an officer of said bank individually, and said notes would then be rediscounted by the appellee, and the Cambridge bank given credit therefor. As part of this arrangement, the appellants, who were directors in the said Cambridge bank, entered into a written agreement with the appellee, guaranteeing payment of notes so discounted. Thereafter, certain notes of borrowers of the Cambridge bank were executed, made payable to T. John Hill, who was at that time the cashier of the Cambridge bank. These notes were indorsed by Hill to the appellee, and the Cambridge bank was given credit for the proceeds thereof, by appellee. It does not appear that transactions of this kind were limited solely to instances where the notes represented excess loans; in fact, it appears that two of the notes involved in this case were *not* excess loans. The instant action is upon three notes. The makers of the notes interpose no defense. The issue here arises solely between the appellants and the appellee under said written contract. The contract is as follows:

"Des Moines, Iowa, April 4, 1925.

"For value received, and for the purpose of enabling T. J. Hill, and/or First National Bank, Cambridge, Iowa, hereinafter designated 'debtor,' to obtain credit of Bankers Trust Company, of Des Moines, Iowa, the undersigned, jointly and severally, hereby guarantee the prompt payment at Des Moines, Iowa, at maturity or thereafter of any and all notes, demands, securities or obligations at any time heretofore or hereafter sold, assigned or otherwise transferred, whether with or without recourse by said debtor to the said Bankers Trust Company, of Des Moines, Iowa, and do also guarantee the prompt payment at maturity or thereafter of any and all indebtedness of any kind whatsoever, whether as principal or endorser or otherwise, now due or which may hereafter become due from said debtor to the said Bankers Trust Company, of Des Moines, Iowa, whether evidenced by

notes, certificates of deposits, open account, overdraft, rediscounts, endorsements, surety, guarantor or otherwise to the extent of Fifteen Thousand and no/100 Dollars, with interest at the rate of eight per cent per annum from date until paid, and agree to pay all costs and expenses paid and incurred in collecting the same. It being the intention that this shall be a continuing inexhaustible guaranty and shall cover any sums at any time due up to the amount above stated.

"Notice of acceptance of this guaranty and of any and all indebtedness or liability accepted during its existence is hereby waived.

"This guaranty shall remain in full force and binding upon the undersigned until written registered notice of its discontinuance shall be received by the said bank, and thereafter until any and all indebtedness or liability accepted before receiving notice of revocation, shall have been fully paid.

"We further agree and authorize the said Bankers Trust Company to extend or renew the several or joint obligations due said bank from or transferred to said bank by said debtor and to take additional or exchange security and to release any or all security without in any manner impairing our several joint liability, and notice of all such acts are hereby waived. The failure of any person or persons to sign this guaranty shall not release or affect the liability of any signer thereof.

"Demand for payment, notice of default or nonpayment, protest, and notice of protest, as to any obligation arising hereunder is waived. It is agreed that the Bankers Trust Company shall not be required to first proceed against or exhaust its remedies against said debtor before proceeding to collect under this instrument, but the parties hereto do obligate themselves jointly and severally to pay promptly upon written or verbal request therefor, any and all sums or amounts due and owing to the Bankers Trust Company by said debtor during the life of this agreement, the same as if said obligations were direct and primary obligations of the below subscribed."

The appellants plead that there was no consideration for the execution of said contract, and allege that the payee in said notes was cashier of the Cambridge bank; that the whole transaction was for the benefit of the Cambridge bank; that it received the "credit" for the notes; and that it was in fact the

"debtor" referred to in said written contract. They contend that there was certain money on deposit in the appellee bank which was surrendered by said bank to the receiver of the Cambridge bank, and appellants insist that they are entitled to be credited with the amount so turned over by appellee to said receiver. Sometime after the contract was executed, the Cambridge bank failed, and a receiver was appointed. At the time. the Cambridge bank had a credit on open account in the appellee bank.

I. Regarding the claim of a failure or want of consideration, the written instrument itself imports a consideration, and the evidence clearly establishes that there was a consideration for the execution of the said contract by the appellants.

II. The contention of the appellants is that they are entitled to credit for the amount which was in the hands of the appellee bank to the credit of the Cambridge bank when it  closed, and which was turned over by the appellee to the receiver of the Cambridge bank. The purpose and intention of the parties to the contract are clearly disclosed by the record. The Cambridge bank desired to continue to loan money to its customers. Some of these loans were excess loans. Such loans could not properly be made. A scheme or plan was devised by which the appellee bank would rediscount notes given for loans made by the Cambridge bank. The appellants by their contract undertook to guarantee all notes that were so rediscounted to the appellee bank. The parties contemplated that the notes might be taken in the name of Hill, who was the cashier of the Cambridge bank, or they might be taken in the name of the Cambridge bank; and, for the purpose of describing all notes, whether taken in the name of Hill or of the Cambridge bank, which might be rediscounted by the appellee bank, and for which credit was to be given, the contract designated Hill "*and/or*" the Cambridge bank as the "debtor." The purpose was to obtain "credit" with the appellee bank for the benefit of the Cambridge bank, not for Hill. In a quite proper sense it may be said that the use of the term "debtor" was somewhat of a fiction. The important thing with which the parties were concerned was the obtaining of credit by the Cambridge bank and a guaranty to the appellee bank of all sums so credited, whatsoever the form

of the indebtedness might be. The word "debtor" was used to describe the one getting the "credit" from appellee bank. This was none other than the Cambridge bank.

In every instance where notes were transferred under this contract to the appellee bank, although taken in the name of Hill, the credit was invariably given to the Cambridge bank. It was to guarantee the prompt payment of all notes for which such credit was given that the contract was entered into. The dealing of the parties and their practical interpretation of the contract make clear what they intended. All of the notes that were transferred to the appellee bank under this arrangement were immediately credited by the appellee bank to the Cambridge bank, which withdrew and used the proceeds. The appellee bank never notified the makers of said notes that it had acquired same. As said notes became due, the appellee charged the amounts thereof to the account of the Cambridge bank, computing six per cent interest, although the notes drew a higher rate, and then forwarded said notes to the Cambridge bank. The whole scheme or plan was that the appellee bank would rediscount the notes representing loans made by the Cambridge bank, whether the notes were taken in the name of Hill or that of the bank, and would give the Cambridge bank credit for the said notes; and the appellants gave a continuing inexhaustible guaranty to pay to the appellee bank "any and all indebtedness of any kind whatsoever" that arose by reason of the transactions contemplated in the contract. No credit was ever given to Hill individually by appellee. It is clear, under the record, that the whole purpose of the arrangement was to benefit the Cambridge bank; and the appellants, as directors of said bank, entered into said contract of guaranty for the sole purpose of enabling the Cambridge bank to obtain the credit contemplated by the rediscount of notes.

The entire course of dealing between the parties places such a practical construction upon this contract that we are not compelled to resort to any nicety of interpretation to determine the purpose of the parties or the relationship that existed between them.

It being true that the appellants were guarantors to the appellee bank of notes which had been rediscounted to it by the Cambridge bank or by Hill, and for which the Cambridge bank

received credit, and it being true that the Cambridge bank was closed by the comptroller of the currency, and a receiver was appointed therefor, and that at said time the appellee had in its possession funds belonging to the Cambridge bank, are the appellants in this action entitled to a credit in the nature of a set-off for the amount of money so in the hands of the appellee bank at the time said bank closed?

The payment by the appellee to the receiver of the Cambridge bank of the amount of the deposit which the Cambridge bank had with the appellee at the time the Cambridge bank failed, did not operate as a discharge of the guarantors *in toto*, under the familiar rule that a release of security without consent of a guarantor operates as a discharge of such guarantor. The deposit did not grow out of any transaction involved in the contract in suit. The appellee bank was a correspondent bank of the Cambridge bank, and the funds on hand in the appellee bank, under the record, accrued in the ordinary course of commercial transactions, and were in no way pledged as security for any of the notes involved. The release or payment of said deposit to the receiver of the Cambridge bank did not, therefore, operate as a discharge *in toto* of the guarantor under the stated rule. In any event, the contract expressly provided that a release of any and all securities should not discharge the appellants.

In its last analysis, the case resolves itself into a determination of the question as to whether or not the appellants are entitled to a credit in the nature of a *pro tanto* set-off for the amount on deposit in the appellee bank to the credit of the Cambridge bank, which was turned over to the receiver of said bank. It may be conceded that, if appellee were suing the Cambridge bank directly, the latter might claim as a set-off or counterclaim the amount due from appellee to the Cambridge bank on deposit. Such right of set-off has been universally recognized between parties so situated. Citation of authorities is not necessary. But that is not the situation here. Appellee was not bound to hold such deposit in its hands, as against the demands of the receiver of the Cambridge bank therefor. It was not security for any debt. It was not a payment. It had no connection with the notes in suit. There was no occasion for a "balancing of accounts" between the appellee and the receiver

of the Cambridge bank. The fund was not held by the appellee under any instructions as to its application, and was subject to demand at the hands of the Cambridge bank or its receiver. Furthermore, the contract provided that the appellee was not required to proceed against or exhaust its remedies against "said debtor" before proceeding to collect under the contract.

We have not been cited to any case where, under such conditions, a *pro tanto* credit or set-off has been awarded to a guarantor. The case of *Tuttle v. Bisbee*, 144 Iowa 53, cited by counsel, recognizes the right of set-off of mutual debts between the parties, but does not meet the question involved in this case.

The appellants gave an absolute and unqualified guaranty to the appellee. They expressly bound themselves to be directly and primarily liable for the obligations guaranteed. No legal defense to their liability for the amount due on the notes sued on appears in the record. The court, therefore, did not err in directing a verdict in behalf of the appellee.

The judgment is—*Affirmed*.

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.